J-A14008-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| HAROLD BURNETT, WILLIAM CROSS, AND SUMMER CROSS | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| BLUE FEDERAL CREDIT UNION | : | No. 1347 EDA 2025 |
| Appellant | : | |

Appeal from the Order Entered April 25, 2025
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 231201512

BEFORE: DUBOW, J., NICHOLS, J., and MURRAY, J.

MEMORANDUM BY DUBOW, J.: **FILED JULY 29, 2026**

Appellant Blue Federal Credit Union ("BFCU") appeals from the April 25, 2025 order entered in the Philadelphia County Court of Common Pleas in which the trial court overruled BFCU's preliminary objection that the class action dispute filed by the plaintiffs was subject to an arbitration agreement.[1] After careful review, we affirm.

The relevant facts and procedural history are as follows. Plaintiffs Harold Burnett and William Cross filed a class action alleging that BFCU, which acted as a lender for the vehicles they purchased, failed to provide proper

---

[1] An appeal may be taken as of right from an order denying an application to compel arbitration. Pa.R.A.P. 311(a)(8); **see also** 42 Pa.C.S. § 7320(a)(1) (stating appeal may be taken from order denying application to compel arbitration). Here, the preliminary objections constituted an application to compel arbitration. **Davis v. Ctr. Mgmt. Grp., LLC**, 192 A.3d 173, 180-181 (Pa. Super. 2018) (holding order overruling preliminary objections seeking to compel arbitration immediately appealable pursuant to Section 7320(a)).

notice of repossession of collateral. BFCU filed preliminary objections asserting, *inter alia*, that both Cross and Burnett had agreed to arbitrate any disputes relating to their car loans.

Cross refinanced a Dodge Ram through BFCU ("Dodge Loan") and Burnett refinanced a Ford F-150. The relevant car loan application documents signed by Burnett and Cross did not contain any arbitration provisions. BFCU instead asserted that the plaintiffs had agreed to an arbitration provision when they signed BFCU's Member Service Agreement ("Agreement"). The Agreement has two parts ("Part 1" and "Part 2") and only Part 1 of the Agreement is signed by members.

Cross signed Part 1 of the Agreement in November 2018. At the time, Part 1 stated that BFCU could change the terms of the membership from "time to time." Mem. in Support of Prelim. Objs., Ex. 3. Part 1 did not contain an arbitration provision and did not reference Part 2 or acknowledge offer of any other terms.

In October 2019, BFCU revised its Agreement. Burnett signed the revised Part 1 of the Agreement in January 2020. The revised Part 1 stated in the "Acknowledgment" section that the signee "acknowledge(s) receiving or being offered the Part 2 of the [Agreement.]" *Id.* at Ex. 4. The revised Part 2 included an arbitration provision in the table of contents on the first page and set it forth in full on page 29.

BFCU produced the copies of Part 1 signed by Cross and Burnett. BFCU also alleged that in January 2019, after it had revised Parts 1 and 2, BFCU

sent Cross a notice that the terms of the Agreement had been updated ("Notice"). The Notice stated that the terms of the Agreement had changed and that the member could "obtain the new [Agreement] on our website [], at our branches or by contacting us during business hours." *Id.* at Ex. 2. BFCU provided a PDF of the Notice it purportedly sent to members and a PDF of the updated Part 2, which now included the arbitration provision.

BFCU also submitted an affidavit from its Vice President of Risk, Rebecca Thoe-Heuer ("Affidavit"). Ms. Thoe-Heuer attested that BFCU mailed both parts of the Agreement to existing members when BFCU updated Part 2 in 2019 and testified that it was BFCU's "customary practice" to provide new members with a copy of the entire Agreement. *Id.* at Ex. A. Ms. Thoe-Heuer did not clarify how and when BFCU mailed the updated Agreement and did not have personal knowledge of when BFCU provided Part 2 to either Burnett or Cross, specifically.

On April 25, 2025, the court overruled BFCU's preliminary objections without holding an evidentiary hearing after finding that BFCU had presented no evidence that Burnett or Cross had ever received the revised Part 2 of the Agreement. The court noted that BFCU failed to present copies of the letters allegedly addressed to Cross or Burnett, email receipts, an affidavit from someone with personal knowledge of the mailing process, or an affidavit otherwise describing the delivery process.

This timely appeal followed.[2]   BFCU and the trial court complied with Pa.R.A.P. 1925.

BFCU raises the following questions for our review:

1. . . . Did the trial court err in concluding that BFCU had presented no evidence that Burnett agreed to arbitrate his dispute?

2. . . . Did the trial court err in ruling, contrary to the mailbox rule, that Cross did not receive the arbitration notice?

3. . . . Did the trial court err in ruling that BFCU provided no evidence that Cross reviewed the arbitration provision?

4. . . . Did the trial court err in concluding that BFCU had presented no evidence that Cross agreed to arbitrate his dispute?

5. . . . In the absence of a specific denial, did the trial court err by not deeming the averments of fact in BFCU's [p]reliminary [o]bjection to be admitted by operation of Pa.R.Civ.P. 1029(b)?

6. . . . Did the trial court err by not holding an evidentiary hearing to determine any purported factual questions regarding the formation of the arbitration agreement before denying BFCU's [p]reliminary [o]bjection?

Appellant's Br. at 2-5 (edited for clarity).

"[O]ur review of a claim that the trial court improperly denied preliminary objections in the nature of a petition to compel arbitration is limited to determining whether the trial court's findings are supported by substantial evidence and whether the trial court abused its discretion in

---

[2] Appellant filed an appeal from the April 25, 2025 order overruling preliminary objections on May 27, 2025. However, docket entries reflect that the court gave notice to Appellant on April 28, 2025 and, thus, the appeal was timely filed. **See, generally**, **Frazier v. City of Philadelphia**, 735 A. 2d 113, 115 (Pa. Super. 1999) (noting order is not appealable until it is entered on the docket with the required notation that appropriate notice has been given).

- 4 -

denying the petition." ***Cardinal v. Kindred Healthcare, Inc.***, 155 A.3d 46, 49–50 (Pa. Super. 2017). "We employ a two-part test to determine whether the trial court should have compelled arbitration: [1] whether a valid agreement to arbitrate exists, and [2] whether the dispute is within the scope of the agreement." ***Washburn v. N. Health Facilities, Inc.***, 121 A.3d 1008, 1012 (Pa. Super. 2015). A party seeking to compel arbitration has the burden of demonstrating that a valid agreement to arbitrate existed between the parties. ***Bair v. Manor Care of Elizabethtown, PA, LLC***, 108 A.3d 94, 96 (Pa. Super. 2015).

* * *

BFCU first asserts that the trial court erred in finding that BFCU had presented insufficient evidence that Burnett ever received the revised Part 2 containing the arbitration provision. Appellant's Br. at 20-28. BFCU asserts that it is sufficient that Burnett signed the revised Part 1 of the Agreement in January 2020, which stated that the signer "acknowledges receiving or being offered the Part 2 of the [Agreement.]" ***Id.*** at 21. BFCU argues that the revised Part 2 was, therefore, "incorporated by reference" in the signed Part 1 of the application. ***Id.*** at 26. BFCU also asserts that Ms. Thoe-Heuer's Affidavit was evidence that "[i]t is BFCU's regular business practice to provide a copy of the [entire] Agreement to new members[.]" ***Id.*** at 21. BFCU argues that "Burnett had a duty to read the [A]greement" and Burnett has not "provided any evidence that he was **not** given a copy of the [] Agreement." ***Id.*** at 23 (emphasis added).

The trial court found that no agreement to arbitrate existed because BFCU provided no evidence that Burnett received the revised Part 2. Trial Ct. Op. at 3. The court found that:

> BFCU has provided no evidence—outside of a PDF of the notice purportedly received by Cross about the update to the [A]greement and a PDF of the updated [A]greement—that either man ever actually received these [A]greements. Without any evidence of the notice and [A]greements actually being provided to them, in the way of proof of mailing or an email receipt or an affidavit describing the delivery process, there is no way to establish Burnett's or Cross's assent to the arbitration and class action waiver provision.

*Id.*

Based on our review of the record, we conclude that the trial court did not abuse its discretion when it determined that BFCU had not met its burden to affirmatively show that Burnett received the revised Part 2. BFCU failed to provide the copy of the revised Part 2 signed by Burnett or any testimony from an individual with personal knowledge of the delivery process of the revised Part 2.

That Burnett signed the revised Part 1 is insufficient to demonstrate that he received or agreed to the terms contained in Part 2. The revised Part 1 merely states that Burnett "acknowledges receiving **or** being offered" Part 2, and an offer alone is insufficient to create a valid agreement. *See* Mem. in Support of Prelim. Objs., Ex. 4 (emphasis added); *see also Est. of Caruso v. Caruso*, 322 A.3d 885, 896 (Pa. 2024) (reiterating that a contract is not binding unless there is an offer, acceptance, and consideration). Additionally, the mere mention of Part 2 does not incorporate it by reference because "a

- 6 -

party cannot accept terms contained in other documents if that party did not receive them[.]" ***Quiles v. Fin. Exch. Co.***, 879 A.2d 281, 287-88 (Pa. Super. 2005). In sum, BFCU, as the party seeking to compel arbitration, had the burden of demonstrating that Burnett had agreed to arbitrate the dispute and failed to do so here. ***See Bair***, 108 A.4d at 96. BFCU's first issue, thus, fails to merit relief.

* * *

BFCU next asserts that the trial court erred in concluding that BFCU had presented no evidence that Cross had received the Notice, which informed members of the revisions to the Agreement, and, consequently, the revised Part 2 of the Agreement. Appellant's Br. at 28-33. BFCU argues that the Affidavit constituted a "sworn attestation of mailing [] sufficient to trigger the mailbox rule, which creates a presumption of delivery[.]" ***Id.*** at 29.

"[I]t is axiomatic that for the presumption of the receipt of a letter to be triggered, as a threshold evidentiary requirement, the party who is seeking the benefit of the presumption must adduce evidentiary proof that the letter was signed in the usual course of business and placed in the regular place of mailing." ***Commonwealth v. Thomas***, 814 A.2d 754, 758 (Pa. Super. 2002). "A presumption that a letter was received cannot be based on a presumption that the letter was mailed." ***Id.*** (citation omitted). "[G]eneric testimony as to the standard mailing procedures" by an employee without any personal recollection of the specific mailing at issue is not sufficient to trigger the mailbox rule. ***Id.*** at 760.

In order for BFCU to benefit from the mailbox rule, it was required to set forth specific evidence of mailing the Notice or Agreement to Cross, specifically. Ms. Thoe-Heuer merely testified generally that "[i]n October 2019, all existing members of [BFCU], including [] Cross, were sent notice of an update to the terms of the [Agreement,]" "the [Agreement] was mailed to existing members" and "[i]t is the customary practice of [BCFU] to provide new members [] with a copy of the [Agreement]." Mem. in Support of Prelim. Objs., Ex. A. As Ms. Thoe-Heuer had no personal knowledge of the mailing or delivery process to Cross, her testimony did not trigger the mailbox rule.

* * *

BFCU relies, in the alternative, on an arbitration agreement signed by Cross "on a separate occasion." Appellant's Br. at 31-32. Cross had previously executed a separate contract with BFCU in order to finance a Jeep ("Jeep Loan") which contained an arbitration provision.[3] The Jeep Loan is not at issue in this lawsuit. BFCU argues that the Dodge Loan documents contain a cross-collateralization clause[4] which "legally linked" Cross's two loan obligations and created "a single, integrated lending relationship." *Id.* at 32.

---

[3] The arbitration provision applied to "[a]ny claim or dispute . . . which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship." Mem. in Support of Prelim. Objs., Ex. 1.

[4] The clause provides that: "[p]roperty given as security for this loan or any other loan Borrower has with [BFCU] will secure all amounts Borrower owes the credit union now and in the future." *Id.* at Ex. 3.

BFCU claims, without citation to any case law, that the Dodge Loan "falls squarely within the scope of the [Jeep Loan] arbitration agreement[.]" ***Id.***

BFCU fails to include a single citation to any case law or relevant legal authority, nor any meaningful discussion and analysis of prior precedent and how it is applicable to his argument, in violation of Rule 2119(a). ***See*** Pa.R.A.P. 2119(a) (stating that the argument shall include "such discussion and citation of authorities as are deemed pertinent"); ***see*** Appellant's Br at 31-32. This Court will address only those issues properly presented and developed in an appellant's brief as required by our rules of appellate procedure. Pa.R.A.P. 2101, 2119. As this Court has made clear, we will not act as counsel and "shall not develop an argument for an appellant, nor shall we scour the record to find evidence to support an argument[.]" ***Milby v. Pote***, 189 A.3d 1065, 1079 (Pa. Super. 2018). Without any legal basis to support BFCU's conclusory statement that the two loans are "legally linked," we reject it and conclude that the trial court properly found that BFCU failed to present evidence that Cross had agreed to arbitrate the instant dispute.

* * *

BFCU next asserts that "[p]laintiffs never contested BCFU's averment that they received the [] Agreement by way of a sworn denial, counter-affidavit, or verified response" and, thus, failed "to specifically deny BFCU's factual averments" that Burnett and Cross received the arbitration provision and agreed to arbitrate the dispute. Appellant's Br. at 33. BFCU characterizes

this as a failure to deny a factual averment that has the effect of an admission under Pa.R.Civ.P. 1029(b). *Id.* at 33-35.

"Averments in a pleading to which a responsive pleading is required are admitted when not denied specifically[.]" Pa.R.Civ.P. 1029(b). However, "[w]hile averments of fact require a denial, conclusions of law do not compel a response." *Rohrer v. Pope*, 918 A.2d 122, 129 (Pa. Super. 2007).

Here, BFCU's contention that plaintiffs received and agreed to the provision is not a factual averment but a conclusion of law which did not require a response. BFCU points to no factual averment in its preliminary objection that, if deemed admitted, would have justified the court in granting its motion. This issue is, therefore, without merit.

* * *

BFCU next asserts that, at minimum, the trial court should have held an evidentiary hearing to resolve any alleged factual questions regarding the plaintiffs' assent to arbitration. Appellant's Br. at 36-38.

When preliminary objections properly raise factual issues, Pa.R.Civ.P. 1028 provides that a judge must resolve the dispute by reviewing evidence "through interrogatories, depositions, or an evidentiary hearing." *Mendoza-Colon v. Luscomb, Inc.*, 335 A.3d 1207, 1214 (Pa. Super. 2025) (citation omitted); *see also* Pa.R.Civ.P. 1028.

Here, the court was not required to hold an evidentiary hearing because the trial court found that BFCU failed to meet its burden to present a controverted issue of fact. The record before the trial court—including

exhibits, affidavits, documents produced in discovery, and answers to plaintiff's interrogatories and requests for production—failed to establish a factual dispute as to whether Burnett or Cross has received or agreed to the arbitration provision. The trial court, thus, did not err or abuse its discretion when it declined to hold an evidentiary hearing.[5]

In conclusion, we affirm the trial court's order overruling BFCU's preliminary objection that the class action dispute was subject to arbitration.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/29/2026

---

[5] BFCU proceeds to argue in the final section of its brief that "Pennsylvania law and the [Federal Arbitration Act ("FAA")] require [] doubts to be resolved in favor of arbitration." Appellant's Br. at 38-42. BFCU failed to include this issue in its Rule 1925(b) statement or in the statement of questions involved and this issue is, therefore, waived. **See** Pa.R.A.P. 1925(b)(4)(vii). Even if this issue were not waived, it would fail to merit relief as the trial court found that there was no evidence that the plaintiffs had agreed to arbitrate the dispute. **See Quiles**, 879 A.2d at 287 (acknowledging that while courts favor the broad enforceability of arbitration agreements as a matter of public policy, the court must first determine whether "the parties have agreed to arbitrate in clear and unmistakable manner").